with me is John Paul Jassy. With the Court's permission, I'll be addressing the substance of copyright issues, and Mr. Jassy will be addressing standard of review issues. And I'd like to reserve five minutes of my 20-minute time for rebuttal. There are three issues that I think are critical to this appeal and cross-appeal, and the first has to do with the District Court's grant of a retrial as to damages. And it's our position that the grant of retrial, based on the evidence from the first trial in the verdict form, was erroneous as a matter of law. Secondly, the verdict form is not a matter of law. It's not a matter of law. The verdict form, as presented during the first trial, contained all of the statutory elements pertaining to infringers' profits, and covered all the material issues that the jury needed to decide for the Court to enter judgment. Third, when the Court ordered a retrial, it was originally to be as to damages issues only, and specifically the issue of infringers' profits. The day before the Court issued an in limineal order, which expanded, in our view, the issues to relate back to liability, which the first jury had already determined, and the Court, by its order, said wasn't going to be disturbed. Why aren't these quintessentially discretionary decisions on the judge's part? Well, as to the issue of the retrial, there's a substantive component and a review component, and I'll try to address both. I may refer to Mr. Jassy on the standard procedural issue, but on the retrial order, we have an order being made based not on the sufficiency of evidence. Rather, it's being based on the determination by the district judge that the verdict form didn't allow the jury to enter all the findings that it needed to enter in order to make a finding on infringers' profits. And because it didn't involve issues going to evidence, the sufficiency of evidence, that was not the basis of the Court's retrial order, the standard for discretion is heightened. And, in fact, the Maricopa County case, which we cite in our principal brief, says that where the decision to retry is based not on a sufficiency of evidence basis, but on a matter-of-law basis, in this case, the verdict form, the Court of Appeals, that would typically defer to the district court, need not give that deference in evaluating that order. She says, I think the verdict form was misleading, or whatever, whatever exact words were. I just don't think it captures what they were supposed to find. Why isn't that a discretionary call on her part? Well, she made the determination that the verdict form did not permit the jury to enter a finding with regard to unattributed profit. And the reason that's incorrect as a matter of law is one of the questions that the jury was asked was, what is the fair market value of the land on which this house was built? And the jury answered that question by finding $4.75 million. But how does that cover, they did do that, so that would be part of the inquiry that would have to go through, but how does that encompass that inquiry? Okay. As to the value of land and how it relates to the issue of infringer's profits, and I'll explain in a moment why the retrial really went back to liability, although it was supposed to be on damages, but in the first trial we had a verdict form which required the jury to find fair market value of land. They found $4.75 million. The testimony at trial was that the defendants had purchased the land for about $2.4 million. So the jury found in making a fair market value determination of $4.75 million that approximately $2.3 million had been realized by the defendants in profit. And because it related to the land and not to the house that we designed, it is profit not attributed to infringement. So there was $2.3 million in the first verdict from the purchase price to the fair market value determination that the defendants were given credit for. That was deducted from the $14 million sum that the jury found for the entire property, residents. Did anybody argue they should not get credit for the profit in the land? No. In fact, the verdict form was set up specifically so that it would capture. So nobody actually even argued that they shouldn't do that, right? No. And they were told to find the fair market value, so they did. Correct. Yes. But did they consider in the first that one was a 20,000-square-foot house and the other is a 12,000-square-foot house and what the differences were between the two houses? Was that part of the first trial? The first trial involved liability and damages issues both. So the first jury was presented evidence on our design. They found that the design was protected by copyright. Specifically, it was an architectural work, which covers the overall form, entire composition of the building. The defendants, when it came time for them to present liability evidence, focused on the issues of vicarious and contributory infringement. They elected not to cross-examine our architectural expert and, moreover, did not call their own architectural expert to point out differences in the overall composition, structure, and so forth. The testimony was, and the evidence was, that Mr. Ciaverdi, who the defendants hired, copied wholesale all of the electronic drawings for the plaintiff's design. He then electronically, through the computer, shrunk those to fit the land that the defendants had purchased. The jury made a finding that the plans in their entirety were copied and that they were modified. Both of those are infringement. When the jury was asked to determine liability, they were asked to find whether original elements of our design were copied and whether original elements of our design were modified. The original elements, by the statute, includes the overall building, how an architect takes the different standard features and arranges them. The jury found that we had to copyright the architectural work, which includes the overall form, and that Mr. Ciaverdi copied it, copied the original elements, and modified it. So the comparison, to the extent there was evidence in the first trial, was made by the jury, and the result was plaintiff has a copyright, and it was copied and modified. I'm not following the import of this. They're not questioning, I don't think, the liability part of it, only the damage part of it. So what are you getting at with this? Well, the question was, was there a comparison during the first trial between the houses? And the answer is, we presented our design, the defendant got up, Mr. Ciaverdi got up, and said that I copied and modified. That was the testimony. There was no testimony by the defense expert. They didn't call one, nor cross-examined any. How does this bear on the verdict form? Well, the argument that's being made is that the same sort of comparison that you make in a liability analysis should be made in calculating these profits. The argument is that when the jury's calculating profits, they ought to deem them to be fair, and they ought to deconstruct the design and assign value to each of the non-infringing features. And the reason that's not proper is because, as I said earlier, the statute protects the entire building. The entire building is protected. Once you move past that finding of liability, it's the defendant's burden now to come in and say, here's what portion of that $14 million in profit doesn't relate to the building. Now, the verdict form didn't ask a question going to that. The verdict form included a question requiring the jury to find fair market value of the land, as I said earlier. Right, of the land, but these other things you were just mentioning a second ago. It doesn't call for the jury to calculate those things. What types of things, Your Honor? The, okay. That's not, that wasn't captured by the verdict form. And the reason it's not captured in that form is because those expenses, for example, all of the construction expenses that the defendants incurred to build this were deducted by the jury. Yeah, these aren't expenses. I'm talking about these other elements. Well, there is no evidence in the record that there is some profit component that can be derived from something called location that's not already included in the land. It's land in Beverly Hills. The jury valued it as land in Beverly Hills. So for them to come back and say we get a separate deduction for location profit is double accounting. You've included the profit in the land, which would include its location, in the finding on land. You also then to come back and try to subtract it again as profit attributable to location or to quality of construction. There's no evidence in the record in either the first or the retrial that there was some profit component in the construction materials. What they spent they were allowed to deduct. There is no way to go back, and they didn't go back, and say, well, we spent $1,000 on windows, and now those windows are worth $1,500, leaving a profit component of $500. You said you wanted your pal to have some time, too, and you've got about nine minutes left. Do you want to turn it over to your colleague? I can, but to address the standard of review issue. It's up to you. I just want you to know you're running out of time. We have nine minutes, Your Honor? Yeah, but in that you wanted to say five, so you have four. Okay. Then let me spend two, then. I know that we said there would be no math, but there is. Okay. Let me spend a couple of minutes, and I'd like to address the verdict form from the first trial and show how it matched the statutory formula that's set forth in the Copyright Act. There's a requirement that the plaintiff prove gross revenue, in this case the overall value of the property. We did that. The jury found $14 million. The statute then imposes on the defendant the burden to prove deductible expenses. That is, cost of construction, anything they spent out of pocket. The second question in the infringer's profit section of the verdict form did that. The third question that's required of the defendants is can you or have you proven elements of profit attributable to factors other than the plaintiff's worth? And, again, the evidence at the first trial, the only evidence that the jury could look to to calculate any profit in the overall value that didn't relate to the building was profit inherent in the land. And the defendants on this point cite to a case called Danielson out of the First Circuit. And, in fact, the district court in ordering a retrial also cites the Danielson case. But I want to point out that the First Circuit in Danielson was confronted with very different facts than we have here. Danielson involved a 70-unit condominium subdivision, which included common areas and a clubhouse and so forth. So in the Danielson case, there was a stipulation by the parties as to what the total value of the sale of all 70 condominium units was. There was also a stipulation that these were the expenses that the $2 million. There was no stipulation nor finding as to what the land as purchased by the defendants or as may have appreciated was worth. So that was missing. The jury in the Danielson case came back and awarded essentially all of the profits by only deducting total sale volume, total sales revenue and deductible expenses as profit. First Circuit understandably said there's certainly no indication that there was a profit component factored in for land. So that case is distinguishable. With that, I'll defer to my co-counsel on the issues of standard of review. Good morning. Good morning, Your Honors. I'd like to just talk about one. Your name, sir, for the record? My name is John Paul Jassy. Thank you, Mr. Jassy. I'd like to just address one particular standard of review as it relates to the motion for a new trial. And typically a grant of a motion for a new trial is reviewed for abuse of discretion. However, where a new trial is granted for reasons that can be reviewed as a matter of law, those questions of law that underlie the district court's decision should be reviewed de novo. Alternatively, if the district court's decision rests on an error of law, that is in itself an abuse of discretion. Now this case does not involve the typical fact-intensive order granting a new trial such as insufficiency of the evidence or excessive damages or juror or attorney misconduct. Rather, here the district court ordered a new trial only because the verdict form purportedly did not permit the jury to make a finding that the law required. This court and the district court sit in similar positions to make a determination as to whether the court should review the verdict form, the jury instructions, and the law de novo. Or alternatively, should find that there was an error of law as to the district court's interpretation of the verdict form as instructed. And for all the reasons that Mr. Bailey pointed out, there was an error of law with respect to the verdict form in this particular excuse me, with respect to the grant of the motion for a new trial in this particular matter. Thank you. Good morning. My name is Steve Mick. I am the counsel for the defendants and the appellees in this matter. At the heart of this case, your honors, we have a 10,000 square foot home on an acre of land in Beverly Hills built to the highest quality with a beautiful yard. It is to the inspection, to the eye, to the mind of any casual observer, a great deal of value. Anyone familiar with buying a home would immediately understand what was testified repeatedly and consistently throughout the case, that almost all of the value of this home was traceable to its location, its size, its quality, and what amenities it offered, the pool, the yard. Almost none. And in fact, there was explicit testimony in the second trial that it could in fact be zero. Almost none of the value of the home traced from the original architectural design of Mr. Hiblinski. Why is that? Again, the testimony in both trials was lengthy and explicit. The value of a home in a real estate market is almost entirely determined by the sale of comparable houses in similar locations. People choose a home and the price is set by what the home down the street design, the home next door has a different design. Except in rare circumstances that don't apply here, the fact that this house had a particular style of window, a particular type of brick, didn't impact the value of the home in any material way. Apportionment of profits in a copyright case is not about punishment. It's not about causation. It's not the exercise of the court to trace through back and say, well, this all happened because of an original bad judgment by Mr. Schiverti. Apportionment of profits, the Supreme Court tells us in Sheldon, is an equitable determination of how much additional profit was earned by the use of the plaintiff's rights over and above what the defendants would have earned by the use of everything else that was available to them, their own work, all of the things that could have been constructed in the public domain. As was pointed out below, you could have built a 10,000 square foot box on an acre of land in Beverly Hills and it would have had enormous value. Same value? If you built a square box, probably not. That would probably fit into the narrow range of things where a poor design took away from value. But I submit to you, Your Honor, People won't pay more for an excellent design is your argument. People won't pay more except in the extremes. A really poor one or a really fabulous one. And all the things in the middle are roughly the same. If this had been a center hall colonial with columns... So if that's true at your extended argument position, since people won't pay more, there's never any value that comes out of an architectural design. Is that your argument? In a traditional residential home in which the architect is... You're saying that if I go out and steal an architect's plans and build a home, unless it's Frank Lloyd Wright or somebody like that, I go out and steal his plans and build my home right according to his plans, well, there's no value to that. Basically because he's not extraordinary, he's only wonderful. Is that the argument? I think the argument is that the value is either going to be de minimis, very small in relationship to the size of the home, or in certain instances it would be zero. But you're just talking lost profits. There might be other elements of recovery. Absolutely. It has nothing to do with actual damage. Right. Now let me ask you, I take your point, but I'm not clear that you objected to the verdict form when you should have. I think, Your Honor, that the record reflects that on March 30th there was an express exchange on the verdict form in which counsel for the defendants objected to the series of questions which became special verdict form questions 22, 23, 24, and 25, and expressly stated that there was no question on the form that allowed the jury to determine what profit was attributable to something else, i.e., something other than the plaintiff's copyright. There was no such question. He made that objection expressly. It appears in the excerpts of record at XER 470. What exactly does he say? We have cited the exact language in our brief, Your Honor. What he is saying is that there needs to be some question in which the jury can determine how much of the value of the home is attributable to things like its location, its size, the quality of the amenities. And then there's a little more give-and-take, back-and-forth discussion. Does he at some point basically give his seal of approval to it? He does not. The question that we are addressing today, which is the issue of apportionment of profits for factors other than the copyrighted work, is not sealed and finalized on the 30th. There is an objection on the record that is very clear, that he says that this is not sufficient as a verdict form because it does not allow the jury to make that finding. And then what the plaintiff and appellant comes with in their briefs is an argument that on the next day, on the 31st of March, that there was a discussion about the final statement that all of the objections, all of the discussion from the previous day, was all preserved. She says expressly that all of the objections made the prior day on the 30th are preserved, and her statement appears at XER 461. Let me ask you this, though. You put on a different case the second time, right? You didn't put on the exact same case. That is correct. I put on no case, Your Honor. Trial counsel put on a different case. All right. Well, but you inherit whatever your record is. Why then, Judge Silverman's question is, did you preserve the error? Why then, you should have been putting on the same case both times, if that's what you were really getting at. Why isn't this just going for a second bite at the apple? You realize the way you did it the first time didn't work out so well. Then you get a different theory come up, and you put on a completely different case, and you get a better result. I think that there are two questions. I mean, there's more credibility to your fact that you preserved the error if you put the same case on both times. Because the error goes to the verdict form, I must respectfully disagree. If there is an objection to an improper verdict form that is made because it does not allow the jury to reach an essential element of the case, that issue is preserved, and it's preserved for appeal. The question of how we choose to question witnesses, what evidence comes on in the second case, doesn't change the question of whether or not the constitutional right to have all of the essential issues submitted to the jury was properly done in the first trial. But then the next day, when you essentially approved the verdict form, you didn't say, but I'm approving it only subject to my objection that I had made previously, correct? I'm using you as trial counsel, not you personally. There was no need to do so, because the trial judge stated expressly on the record that the prior objection was preserved. Which is the trial judge's way of saying, I don't want to hear your stupid objections again. Yes, absolutely. And the law is quite clear that on that record, the objection is preserved. Moreover, the trial judge, who heard this exact waiver argument, and who was, in fact, the judge who had said that the objection is preserved, ruled that it hadn't been waived. She was absolutely in the best position to know what the objection was, when it had been made, and what her intent was when saying that the objections were all preserved. And in her view, it had not been waived and had, in fact, been preserved. So you preserved it, but after, in hindsight, when you got a second bite at the apple, which you would allege you would be entitled to, you just decided to try a little bit of a different case. Correct. I think the notion that trial counsel learned from the prior experience is... I mean, why would you do it the same if it hadn't worked out that well the first time? Precisely. The question that Judge Fernandez asked about whether or not an apportion might result in a small or zero number is a question that the Supreme Court addresses specifically in the Sheldon case. And, in fact, on page 400, the Supreme Court, in the Sheldon case, states expressly that if the plaintiff's original design added nothing to the profitability that the defendants achieved, then the apportionment should yield zero. Of course that's true. My question to you wasn't that. I was trying to test the limit of your argument, which seemed to be that architectural plans add nothing to the value of the house, period, unless you're Frank Lloyd Wright. That's basically what you argued. And that's a little bit extreme, is all I was suggesting to you. I... Whether or not it's extreme depends upon the facts of the particular trial. And if it were true, you didn't have to put all the evidence you did at the second trial. No. The testimony in the second trial by one of the eight experts who testified, and in this case, Mr. Larry Somer, was precisely to that point, Your Honor. He testified, in fact, that unless you were a famous architect, it was not going to add anything to the value of the house. So you can steal from someone that's not famous, but don't steal from someone that is famous? I mean, I don't think that the law wants to promote stealing when a copyright violation. It doesn't say, you know, you're not... You still can be a victim of your ideas being stolen under the applicable law, even if you're not famous. Or Frank Lloyd Wright, early in his career, maybe, you know, he's still the same Frank Lloyd Wright. The law would always prohibit an unlawful taking of what is within the copyright. And as Judge Silverman points out, you would always be liable for damages. The determination of how much is attributable, what is the relative value, is a non-punitive determination in which we allocate. Counsel for the appellants has stated repeatedly in the brief, and again here today, that we should not exercise a dissection, if you will, of which pieces were properly belonging to the plaintiff and which pieces were contributed by the defendants. And yet the case law with respect to apportionment says that we should, in fact, do exactly that. Well, so perhaps, you know, maybe a more correct view would be that it's not that a less famous person can't have their rights violated, but damages is always going to factor that in. Correct. But to say that it would be zero or de minimis because you're not famous is perhaps a little harsh and maybe a little over-amping as an advocate. I submit, Your Honor, that if you think about the scope of what it means to have an architectural design in the abstract, that we could sit down and pencil out a four-bedroom center hall colonial with columns in the front in a traditional style, and it would be an architectural design. And yet my penciling of a four-bedroom center hall colonial would add nothing to the value of a home, given the hundreds or thousands of other center hall colonials that are available for sale. So there will be instances in which the additive value of a particular architectural design will be a de minimis figure. And I apologize if the Court views that as an extreme example, but I think it's consistent with the testimony in the second trial, and I think it's consistent with common experience. But you're not saying they have the right to steal it. No, not at all. And if you're not Frank Lloyd Wright, you're Frank Lloyd Schmuck, and you charge $50,000 for a design, and if they steal it, they pay you $50,000. And in addition, if they've suffered lost profits, they can recover their lost profits, but that's a matter of something they have to prove. There are many elements of recovery here. We are focused almost exclusively on one of the elements, which is the infringer's profits, which is focused on the additive value of what the plaintiff has contributed versus the additive value of what the defendants have contributed. That is the exact analysis that the Ninth Circuit has gone through in the Stonecipher decision, that it has gone through in the Frank Musi decision, and that it approved in the Cream Records decision. In fact, the Cream Records decision is almost a replay in some senses of what occurred here, where you had an initial trial with respect to liability and a second trial with respect to apportionment, and the plaintiff appealed saying that they had not been apportioned enough value because the district court in the Cream Records case found that the proper apportionment of value to the plaintiff's contribution was one-tenth of one percent, as thin a de minimis slice as one could imagine. And yet the Ninth Circuit approved, saying that what had occurred there was simply a determination of how much the scope of infringement had been versus what value had been contributed by the other efforts and works produced by the defendants, and said that those were all fairly within the province of the trial court's job in that case. With respect to the second trial, I would like to make the point, because I think that our view is consistent with some of the court's questions earlier today. That the decision to grant a new trial in the first instance was eminently within the trial court's discretion here. We think that the trial judge made the correct decision, obviously, but there were a lot of judgments there, including the waiver issue, including the evidence on the record issue, which were discretionary issues that the trial judge obtained from her own experience and made the correct call. Moving to the second trial, as I alluded to earlier, the parties respectively put on eight different experts to testify about the value of the house, the relative contributions of design versus location versus size, the differences between the houses in order to assess the extent to which one house overlapped with the copyright that the plaintiffs had put in. And through all of that record, literally hundreds of pages of testimony, the jury had more than an abundant amount of information from which it could have gleaned, and in fact did glean, a reasonable approximation, to use the term that the Supreme Court coined in Sheldon and which has been adopted by this Court ever since. In our papers, I believe I noted in my review that we had a record site that was a little off. At one point we had made the suggestion, I think, that at XCR 146 through 151, there was testimony about the architectural design being de minimis. The correct citation is XCR 213 through 218, and it is that point where a second expert, Kurt Rapoport, makes what some might call an extreme statement, that the relative contribution of architectural value by a standard architect in a standard home is essentially zero. So at one end of the jury spectrum, they had direct evidence in the record from which they could have concluded that the proper apportionment was zero. At the other end of the spectrum, they had testimony from other experts saying that the relative contributions of the various factors might be higher. The jury made a determination here apportioning 25 percent of the profit, $660,000, more than three or four times what Mr. Herblinski charged for the plans in the first instance, of profit in this case to the plaintiff. The plaintiff's final award in this case is more than a million dollars. It is our view that the result that was obtained in the first case below, a judgment now of $1.2 million, I believe, is a fair judgment. It is a reasonable approximation, and it is a judgment that should be left intact. As we have stated in our papers, we have raised before this Court a number of points in a conditional cross-appeal in the event that the judgment is disturbed. But it is our sincere hope that the Court will find no reason to disturb the judgment. Thank you, Mr. McNamara. Gentlemen, you get the last word. In listening to opposing counsel's comments, it's clear that the defense values architectural work very little. That's not the test. It's not a popularity contest, whereas the Court noted that the value of the work is somehow dictated by the fame of the architect. Well, that would have to be a factor, though. I mean, Frank Lloyd Wright houses, as opposed to, as my colleague said, Frank Lloyd Schmuck houses, are worth more. No two ways about it. They may be worth more, but what that does to the run-of-the-mill architect, and for whom this legislation was passed in 1990 to protect all architects, is to say that we value your work so long as you prove that your work is original, your work is valued. Whether you have name recognition or not, or Frank Lloyd Wright at the beginning of his career may produce a tremendously artistic and wonderful design, but because he hasn't yet developed the stature that he acquired later, there's the assessment that there's no value to what he contributed. Certainly that some architects may command some additional portion of value for their name, but that's not the test. The test is the overall value of the property. Jury valued that in the first case. The defendants then get the benefit of being reimbursed what they spent to build the place. They also get the benefit of having profit that they realized in the land purchase, which, again, complies with the statute. There was a finding by the jury in the first trial of unattributed profit. The defendants got the full benefit of that. The defendants then have to prove and did not prove, beyond land value in the first trial, that the remaining portion of the profit was attributable to something else. There was nothing else in that first trial, and Judge Callahan, your point is well placed. The second trial, which involved all sorts of liability issues in addition to what were supposed to be damage issues, really put into stark contrast the two trials. But, you know, what lawyer in their right mind, I mean, anyone that, you know, I tried a lot of cases in my day and I've seen people do it. Why would you try something the same when it didn't work out? You know, I mean, there are different theories and what's admissible at one point may not be admissible at another point. I think the issue is just whether they preserve the objection. And they did seem to make it, and the court did seem to say you don't need to keep repeating your objections. And how annoying does a lawyer want to be to a judge, to come back every day, judge, I still object to that. Judge, I still object to that. Well, we know how that works out. On that point, and we cite in our brief that defense counsel has asked the day that we gave closing arguments whether the verdict form was acceptable. The objections that were made the day prior were accepted, that the form was accepted by defense counsel twice on the 31st. This would be fine with defendants. He then goes on in closing argument that same day to explain to the jury where he thinks they ought to put these other profit factors, which he claimed were in the record. Well, what would you have him do? I mean, he's stuck with the form and he's got to make the best of it he can. If he went outside of that and pretended like the judge hadn't ruled against you before, that doesn't work out too well. The court would call you right in the middle of the argument, they'd say counsel approach the bench, I told you, you can't make that argument, now don't, you know, stop right here. It's not that the court precluded defense counsel from asking for unattributed profit. In fact, despite the absence of evidence in the record, he stood up and said we think you ought to deduct $5 million because it's a nice big house in Beverly Hills. And you put that answer, ladies and gentlemen of the jury, right here in the verdict form. Here's where you put it. Question 25, which, by the way, was requested by the defense and over our objection, was included by the court as a catch-all so that there would be a place for defense counsel to reference deductions that may not have been covered in the preceding three questions. So the court grants a retrial on this limited issue. Was the jury prevented from making a finding on unattributed profit? And the answer clearly was no, there would be no reason for a retrial. We had all of the statutory elements required in the first three questions, and in addition had this fourth question added, which in our view raises, again, the possibility of this double accounting where you're recouping profits and also recouping those same things as costs in other questions. But they have that added as well, and they have the benefit of directing the jury to make the finding on that last question. With that, I'll thank the Court. Thank you, Mr. Bailey. Thank you, Mr. Jesse. And also, Mr. Mac, thank you. The case is required to be submitted. Thank you.
judges: Fernandez, Silverman, Callahan